Shields^ Special J.,
sitting in his place, delivered the opinion of the Court.
This bill was filed in the Chancery Court at Green e-ville, for the purpose of establishing a claim, growing out of an alleged fraudulent transaction with a Government voucher, against the defendant, Joseph A. Williams, and for the further purpose of having declared void, as against the complainant, a conveyance made by the said Joseph A. Williams to his co-defendant, Catharine D. Williams, and the land so conveyed subjected to the satisfaction of said claim.
The Chancellor held, the defendant, Joseph A. Wil- *627 liarns, was liable to tbe complainant in tbe sum of eight-hundred and five dollars, and so decreed, which deeree remains in full force and effect, no appeal from the-same having been prosecuted. The Chancellor also held, that the conveyance was void as against the complainant, and decreed that a sufficient portion of the land so conveyed, to satisfy the amount of said decree against Joseph A. Williams, be sold for that purpose, from which decree Catharine D. Williams prosecutes an appeal to this Court.
It appears that, on April 25, 1864, Catharine D. Williams, who was the mother of Joseph A. Williams, conveyed to him a very valuable tract of land, situated in Greene county, known by the name of the “College Farm.” This conveyance contains the following recital:
“ Whereas, by virtue of the power in me vested by the last will and testament of my husband, Alexander Williams, devising to me the title absolute in fee simple to all his estate, etc., leaving the same absolutely at my disposal; and whereas, in discharge of the trust committed to ■ my hands, I feel it to be my duty to distribute the same equally among my children and heirs at law, the same being the children and heirs at law of the testator. Now, therefore, in part compliance with what I believe to have been the spirit and intention of said last will and testament, I do hereby transfer and convey,” etc.
The conveyance also contains a covenant of general warranty of title, and was duly registered in Greene county, on April 26, 1864.
It seems that Mrs. Williams, although her late hus *628 band had devised the said land to her, as recited in her said conveyance, in fact, held the same under the law of descent, as heir at law of her father, who, many years previous to that time, had departed this life.
Some time after this conveyance was made and registered and in the latter part of the year 1864, or early in 1865, the transaction occurred between the complainant and the defendant, Joseph A. Williams, out of which the demand of .the former against the latter, grew. It is unnecessary, as Joseph A. Williams submits to the decree against him, to encumber this opinion with a statement of the nature and particulars of said transaction. It is sufficient to say, that in one contingency, which afterwards actually happened, it involved the element of credit given and extended to said Joseph A. Williams, by the complainant.
At a still later period, to-wit: May 15, 1865, the said Joseph A. Williams re-conveyed the same tract of land to his mother, reciting as a consideration therefor, that the former conveyance to him was with the distinct understanding and promise on his part that if, when peace was made and civil order was restored, his mother should so desire, he should re-convey, and she being now dissatisfied and desiring the re-conveyance, he, therefore, in accordance with his said promise, makes it.
It is this re-conveyance which the bill seeks to have set aside.
The circumstances under which these two conveyances were made, and the motives, designs and purposes of the parties making them, fully appear in the record.
.Mrs. Williams was in sympathy with the South, and *629 it may bé by such overt acts as sbe was capable of performing, a rebel; and was apprehensive that her large and valuable estate would be confiscated. Her son, the defendant, Joseph A. Williams, professed to be loyal to the Government of the United States, and seems to have been so considered.
The witness, Hr. S. P. Crawford, who was the family physician, and being a lawyer, was also the legal adviser of Mrs. Williams, states that Joseph A. Williams paid nothing • for the land; that he and witness insisted that the conveyance should be made; that finally Mrs. Williams reluctantly made the conveyance, with the express understanding that if the reports about confiscation should prove false, and the other children were not satisfied, that a re-conveyance should be made. And it is further proved by this witness that, after the danger of confiscation was over, and on dissatisfaction being expressed, Joseph A., with much, persuasion and under a threat of litigation, was induced to re-convey the property to his mother.
It is insisted- in behalf of Mrs. Williams, that the conveyance made by her to her son is void, and this for several reasons:
First. That at the time she made the conveyance she was of unsound mind. It is true that she was laboring under much mental depression, resulting from recent sickness, advanced age, and apprehension of confiscation of her property; but we are of the opinion that the testimony shows, that she was fully competent to make a binding contract. Nor do we think that there is evidence in the record to show that her co-defendant exer *630 cised such, undue influence over her mind as, in law, to render the conveyance void. She was under the protection of her confidential legal and medical adviser, who, we think, exercised more influence over her mind in this transaction than did the son. It is entirely clear to our minds, that her sole object in making this conveyance, was to escape the apprehended sweeping desolation of confiscation, and that but for this she would not have made the conveyance — an apprehension which, at the time, was not without foundation; and it is equally as clear, that the motive assigned in the recital to the deed was not operative on her mind at all, as the subsequent' re-conveyance fully proves.
Second. That as the preamble of the conveyance recites that she held under the will of her husband, and as she, in fact, did not hold as the devisee of her husband, but as heir at law of -her father, it is to be taken she conveyed only such interest as she held as devisee, which was nothing. If she had expressly, and in terms, conveyed such estate as was devised to her, there would be some force in this argument. But such is not the fact; and the conveyance containing a general warranty of title, she is estopped from denying the title of the warrantee. Kawle on Oov., 394; Henderson v. Overton, 2 Yer., 398.
Third. That the conveyance, and the collateral agreement to re-convey on the happening of certain events, taken together, constituted in law but a trust, which could not be subjected to the payment of the debts of the trustee. But it abundantly appears, that the prime motive was to avoid confiscation; and we do not think that there was any intention to create any trust, as is *631 now argued. The fact that the conveyance was made to defeat the confiscation of the property, is very far from rendering the deed void as between the parties, for obvious reasons; and the conveyance of April 25, 1864, operated to vest the title in Joseph A. Williams; and the subsequent re-conveyance, under the facts and circumstances of this case, must be held to have been made without consideration, and was fraudulent, by construction, against existing creditors — Smith v. Greer, 3 Hum., 118, 121; Nicholas v. Ward, 1 Head, 323 — if not in fact.
Again, whatever may have been the private and secret agreement between the parties, express or implied, Mrs. Williams, by making this conveyance to her son valid and effective on its face, and permitting the same to be registered, thereby held her son out to the world as the owner of the property, whereby he was enabled to obtain credit.
On familiar and sound principles of equity jurisprudence, she is now estopped to deny his title and assert her own, to the prejudice of persons who extended credit on the faith of such ownership. A party who. enables another to commit a fraud, is answerable for the consequences. 1 Story Eq., § 384.
But it is further insisted, that, as the conveyance of April 25, 1864, was not stamped, it is utterly void, and communicated no title to Joseph A. Williams. This is substantially a deed made without valuable consideration, and it was not necessary that it should be stamped with conveyance stamps. But every agreement or writing, not otherwise specified, is liable to a stamp duty *632 of five cents on every piece of paper on which it is written. Now is this deed an agreement or contract within the meaning of this law? If so, what is the legal consequence? "We are of the opinion, that in answer to the first question, we must hold that the instrument is an. agreement or contract, within the meaning of the Act of Congress. But in view of the fact which we judicially know, and which also appears in proof, that the revenue law of the United States, by reason of the military force of the Confederate States, was excluded from enforcement at the time and place when and where the said contract was made, and that it was impossible to comply with the law requiring such instruments to be stamped, we can not hold, even if the assumption contained in the proposition of the defendant be well founded, that the failure to stamp the deed so affected its validity, as a muniment of title, that it vested no estate in Joseph A. Williams. On the contrary, we think that the circumstances excuse the failure to comply with the requirements of the law, which by reason of. a permanent force hostile to its operation, and maintaining, in fact, another and different system of taxation, could not possibly have been executed, or even submitted to, by the most willing and loyal. Such a holding would carry havoc and ruin into the contracts and titles of twelve millions of people, made and acquired during a period of four years.
Affirm the decree.